IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

No. 09-55698
Panel Decision Filed March 2, 2011

Before Hon. Harry Pregerson and Susan Graber (Circuit Judges)
and Kenneth Ripple (Senior Circuit Judge for the U.S. Court of Appeals
for the Seventh Circuit, Sitting by Designation)

SANTIAGO LOPEZ,
     Plaintiff-Appellant,

v.

PACIFIC MARITIME ASSOCIATION,
     Defendant-Appellee.

On Appeal from the United States District Court
for the Central District of California (No. 2:06-cv-04154-GW-JTL)
Hon. George H. Wu Presiding

BRIEF OF U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
AS <u>AMICUS CURIAE</u> IN SUPPORT OF
PETITION FOR REHEARING OR REHEARING EN BANC

P. DAVID LOPEZ
General Counsel

CAROLYN L. WHEELER
Acting Associate General Counsel

LORRAINE C. DAVIS
Assistant General Counsel

DANIEL T. VAIL
Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M Street NE, Room 5NW14P
Washington, D.C.  20507
(202) 663-4571
daniel.vail@eeoc.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

STATEMENT OF INTEREST ..................................................................1

STATEMENT OF ISSUES ........................................................................1

BACKGROUND ........................................................................................2

PANEL OPINIONS ...................................................................................3

ARGUMENT .............................................................................................6

    I.     The Panel Majority's Ruling Misapplies the Plain Language of the ADA by Holding a Plaintiff Must Prove a <u>Disproportionate</u> Impact to Prevail in a "Screen-Out" Claim. .........................................................6

    II.    The Panel's Ruling Contravenes Supreme Court and This Court's Precedent in Stating Categorically that the ADA Does Not Prohibit Adverse Actions Taken Because of "Factors Merely Related to a Person's Disability." ...........................................................................14

CONCLUSION ........................................................................................18

CERTIFICATE OF COMPLIANCE ...................................................C-1

CERTIFICATE OF SERVICE ............................................................C-2

# TABLE OF AUTHORITIES

## Cases

Collings v. Longview Fibre Co., 63 F.3d 828 (9th Cir. 1995) ................................18

Conn. v. Teal, 457 U.S. 440 (1982) ..........................................................................8

Cripe v. City of San Jose, 261 F.3d 877 (9th Cir. 2001) ........................................12

Den Hartog v. Wasatch Academy, 129 F.3d 1076 (10th Cir. 1997) .......................17

Fed. Express Corp. v. Holowecki, 552 U.S. 389 (2008) ...........................................6

Gambini v. Total Renal Care, Inc., 486 F.3d 1087 (9th Cir. 2007)............16, 17, 18

Griggs v. Duke Power Co., 401 U.S. 424 (1971) ......................................................8

Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343 (2009)............................................6

Hazelwood Sch. Dist. v. United States, 433 U.S. 299 (1977) ...............................4, 9

Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993) ...................................3, 4, 15, 16

Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128 (9th Cir. 2001).................17, 18

Newland v. Dalton, 81 F.3d 904 (9th Cir. 1996).............................................. 17-18

Raytheon Co. v. Hernandez, 540 U.S. 44 (2003) ....................................3, 7, 15, 16

Sch. Bd. of Nassau County v. Arline, 480 U.S. 273 (1987) ........................16, 17, 18

Smith v. City of Jackson, 544 U.S. 228 (2005) .........................................................6

Watson v. Fort Worth Bank & Trust, 487 U.S. 977 (1988) ......................................9

# TABLE OF AUTHORITIES

## Statutes

29 U.S.C. § 794 ..................................................................................................11

42 U.S.C. § 2000e ...............................................................................................6

42 U.S.C. § 2000e-2(k)(1)(A)(i) .........................................................................8

42 U.S.C. § 12101 ...............................................................................................1

42 U.S.C. § 12112(a) .......................................................................................7, 10

42 U.S.C. § 12112(b)(3)(A) .................................................................................7

42 U.S.C. § 12112(b)(6) ......................................................................................7

42 U.S.C. § 12113(a) ...........................................................................................7

42 U.S.C. § 12114(b) .........................................................................................11

42 U.S.C. § 12114(c)(4) ..................................................................................15, 17

42 U.S.C. § 12201(a) .........................................................................................11

42 U.S.C. § 12210(b) .........................................................................................11

## Regulations

29 C.F.R. Pt. 1607 .............................................................................................11

29 C.F.R. § 1630.3(b) ........................................................................................11

29 C.F.R. § 1630.7(a) ..........................................................................................7

29 C.F.R. § 1630.10 .............................................................................................7

29 C.F.R. § 1630.15(b) ........................................................................................7

# TABLE OF AUTHORITIES

29 C.F.R. § 1630.15(b)(1)........................................................................7

29 C.F.R. § 1630.15(c)..........................................................................7, 8

29 C.F.R. § 1630.16(b)(4).....................................................................15

29 C.F.R. Pt. 1630 App. § 1630.10.......................................................11

29 C.F.R. Pt. 1630 App. § 1630.15(b) and (c)....................................8, 10

45 C.F.R. Pt. 84, App. A ......................................................................11

## Rules

Fed. R. App. P. 29(a) ..............................................................................1

Fed. R. App. P. 35(a)(1)........................................................................14

Fed. R. App. P. 35(a)(2)..........................................................................6

Circuit Rule 29-2(a) ...............................................................................1

Circuit Rule 29-2(c)(2)........................................................................C-1

## Miscellaneous

Barbara T. Lindeman & Paul Grossman, Employment Discrimination Law
(C. Geoffrey Weirich ed., 4th ed. 2007) ..................................................5

EEOC Technical Assistance Manual:  Title I of the ADA (1992) ....................5, 10

## STATEMENT OF INTEREST

The U.S. Equal Employment Opportunity Commission (EEOC or Commission) is the federal agency charged with interpreting and enforcing portions of the Americans with Disabilities Act (ADA), as amended, 42 U.S.C. §§ 12101 et seq. The Commission is concerned that aspects of the panel's opinion will hinder efforts to enforce the ADA, and believes this case raises issues of exceptional importance. The EEOC thus supports Plaintiff-Appellant Santiago Lopez's petition for rehearing or rehearing en banc, and files this amicus curiae brief in order to offer the Commission's views to the Court. See Fed. R. App. P. 29(a); Circuit Rule 29-2(a).

## STATEMENT OF ISSUES

- Whether the panel majority erred in requiring a plaintiff to prove a disparate impact to prevail in a "screen-out" claim brought under Section 102(b)(6) of the ADA.

- Whether the panel erred in stating categorically that the ADA does not prohibit an employer from taking adverse actions because of "factors merely related to" an employee's disability.

## BACKGROUND

Defendant-Appellee Pacific Maritime Association (PMA) represents the shipping lines, stevedore companies, and terminal operators that run the ports along the U.S.'s west coast. Slip Op. at 3. PMA enforces the policies that govern the hiring of longshore workers at these ports. Id.

Under these policies, applicants for "casual" longshore work must pass a drug test. District Court Docket No. (R.) 134 at 3. If an applicant fails this drug screen, he or she is <u>forever</u> barred from being hired as a casual longshore worker. <u>Id.</u> This "one-strike rule" is a lifetime ban and has no exceptions. <u>Id.</u> at 6. It thus permanently disqualifies all drug addicts who apply and fail the drug test once – even if they reapply after having been completely clean and sober for years (or even decades).

Lopez used to be a drug addict. Slip Op. at 3. In 1998, while Lopez was addicted to drugs, he took the requisite pre-employment drug screen and failed. R.134 at 3, 5. Consequently, he was not hired. <u>Id.</u> at 3.

However, in 2002, Lopez became determined to conquer his addiction. Slip Op. at 3. By 2003, he was clean and sober. R.134 at 5. In 2004, he reapplied to be a casual longshore worker. Slip Op. at 3. In 2005, Lopez was told that he had been disqualified from consideration because he had failed the requisite drug test seven years earlier. R.134 at 4-5. Since around 2004, twenty-seven individuals

(including Lopez) have been disqualified from employment for failing a previously-administered drug test. Id. at 6.

Lopez sued alleging that PMA had violated the ADA by engaging in both disparate-treatment and disparate-impact discrimination on the basis of Lopez's disability (i.e., as a rehabilitated drug addict and/or as an individual perceived to be a drug addict). R.134 at 1-2. The district court concluded that genuine issues of material fact existed as to whether Lopez "was, is or was presumed to be disabled." Id. at 10. The district court nevertheless granted PMA's motion for summary judgment on all claims. Id. at 24-25.

## PANEL OPINIONS

On March 2, 2011, a divided panel of this Court affirmed. In rejecting Lopez's disparate-treatment claim, the panel pointed out that the Supreme Court in Raytheon Co. v. Hernandez, 540 U.S. 44 (2003), "disapproved of the argument that, because the employee's misconduct related to his drug addiction, the employer's refusal to rehire him on account of that misconduct violated the ADA." Slip Op. at 4 (citing Raytheon, 540 U.S. at 54 n.6). The panel then stated categorically that the "ADA prohibits employment decisions made because of a person's qualifying disability, not decisions made because of factors merely related to a person's disability." Slip Op. at 4. In reaching this conclusion, the Court relied on Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993), in which the Supreme

Court had ruled that "an employer's decision 'wholly motivated by factors other than age' does not constitute age discrimination, even if 'the motivating factor is correlated with age.'" Slip Op. at 4 (quoting Hazen Paper, 507 U.S. at 611).

A panel majority then stated that, to survive summary judgment on his disparate-impact claim, Lopez needed evidence "that the one-strike rule results in fewer recovered drug addicts in Defendant's employ, as compared to the number of qualified recovered drug addicts in the relevant labor market." Slip Op. at 7. The majority cited Hazelwood School District v. United States, 433 U.S. 299, 308 (1977), a Title VII systemic disparate-treatment case, as support.

The panel majority noted that Lopez's expert had compared the selection rates of the whole population of longshore worker applicants (forty-eight percent) with that of the "protected group" of one-time drug addicts who had failed the drug test (zero percent), and had concluded that the one-strike rule thus disproportionately affected the protected class. Slip Op. at 7. The majority rejected this methodology. It reasoned that by defining the protected group as "the number of recovered drug addicts who previously applied to Defendant and were rejected because they failed a drug test, Plaintiff and his expert assume their own conclusion" since PMA will never hire those individuals and thus their selection rate always will be zero. Id. at 8.

Instead, the panel majority ruled, the correctly defined protected group is "recovered drug addicts." Slip Op. at 8. According to the majority, it did not matter whether such individuals ever applied for casual longshore work. Id. Rather, "both logic and precedent require [the plaintiff] to produce some evidence that tends to show that the one-strike rule excludes recovering or recovered drug addicts disproportionately" from PMA's workforce. Id. According to the majority, this record contained "neither statistical nor anecdotal evidence to that effect." Id. at 7.

Judge Pregerson dissented from the portion of the opinion rejecting Lopez's disparate-impact claim. Slip Op. at 9-12. He concluded that no statistical evidence should be required to prove a disparate-impact claim under the ADA, emphasizing that "[o]ften there may be little or no statistical data to measure the impact of a procedure on any 'class' of people with a particular disability compared to people without disabilities.'" Id. at 11 (quoting Barbara T. Lindeman & Paul Grossman, Employment Discrimination Law 953 (C. Geoffrey Weirich ed., 4th ed. 2007) (quoting EEOC Technical Assistance Manual: Title I of the ADA, § 4.3.2 (1992)). Here, Judge Pregerson reasoned, it would be "manifestly unreasonable to require statistical data regarding the number of recovering addicts either hired by an employer or screened out by the test" because such evidence is "not practically available." Slip Op. at 11.

# ARGUMENT

## I. The Panel Majority's Ruling Misapplies the Plain Language of the ADA by Holding a Plaintiff Must Prove a **Disproportionate** Impact to Prevail in a "Screen-Out" Claim.

In the Commission's view, the panel majority's ruling reflects a fundamental misunderstanding of the possible methods for proving "screen-out" claims under the ADA. The majority applied evidentiary standards developed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., to Lopez's ADA claim. In doing so, the majority ignored critical differences in the statutory text of Title VII and the ADA. See Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2349 (2009) ("When conducting statutory interpretation, we 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.'") (quoting Fed. Express Corp. v. Holowecki, 552 U.S. 389, 393 (2008)); cf. Smith v. City of Jackson, 544 U.S. 228, 240 (2005) (finding that "textual differences between the ADEA and Title VII make it clear that even though both statutes authorize recovery on a disparate-impact theory, the scope of disparate-impact liability under ADEA is narrower than under Title VII"). Unrectified, this legal error will erode protections from disability-based discrimination and impede the EEOC's ADA enforcement efforts. The panel's ruling thus warrants rehearing. See Fed. R. App. P. 35(a)(2) (rehearing may be ordered if the proceeding involves a question of exceptional importance).

Section 102(a) of the ADA provides that employers like PMA shall not "discriminate against a qualified individual on the basis of disability" with respect to (among other things) hiring.  See 42 U.S.C. § 12112(a).  Section 102(b)(3) of the statute defines "discriminate" to include using standards or criteria that "have the effect of discrimination on the basis of disability."  42 U.S.C. § 12112(b)(3)(A); see also 29 C.F.R. § 1630.7(a) (EEOC's regulations interpreting Section 102(b)(3)(A)).  Similarly, Section 102(b)(6) of the ADA defines "discriminate" to include using qualification standards or other selection criteria that "screen out or tend to screen out an individual with a disability or a class of individuals with disabilities" unless the defendant shows that the standard or criterion is "job-related for the position in question" and "consistent with business necessity."  See 42 U.S.C. § 12112(b)(6); see also 29 C.F.R. §§ 1630.10, 1630.15(b), (c) (EEOC's regulations interpreting Section 102(b)(6)).  Further, even if the defendant can make this showing, it also must demonstrate that the standard or criterion cannot be satisfied with reasonable accommodation.  See 42 U.S.C. § 12113(a); see also 29 C.F.R. §§ 1630.15(b)(1), (c).

Some "screen-out" claims brought under Section 102(b)(6) are referred to as "disparate-impact" claims.  See, e.g., Raytheon, 540 U.S. at 53 (citing Section 102(b) in concluding that "disparate-impact claims are cognizable under the ADA"); see also 29 C.F.R. § 1630.15(c) (referring to "other disparate impact

charges"); 29 C.F.R. Pt. 1630 App. § 1630.15(b) and (c): Disparate Impact Defenses (the EEOC's interpretive guidance on the ADA, similarly referring to certain screen-out scenarios as involving "disparate-impact"). However, taken out of context, the use of this disparate-impact shorthand to refer to all screen-out claims can be misleading. "Disparate impact" in the Title VII sense is not synonymous with "screen out or tends to screen out" under the ADA. And while adducing proof of disparate impact certainly is one way for a plaintiff to bring a "screen-out" claim under the ADA, it is not the only permissible method.

The plain language of Title VII provides that the statute is violated if "a complaining party demonstrates that a respondent uses a particular employment practice that causes a <u>disparate</u> impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i) (emphasis added); <u>see also</u> <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424, 431 (1971) (holding Title VII "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation"). The existence of a disproportionate adverse effect on the protected group is itself proof that the challenged neutral practice discriminates "because of" the protected Title VII trait at issue. <u>See, e.g.</u>, <u>Conn. v. Teal</u>, 457 U.S. 440, 448 (1982) ("When an employer uses a nonjob-related barrier [that] has a significant

adverse effect on minorities or women, then the applicant has been deprived of an employment opportunity 'because of . . . race, color, religion, sex, or national origin.'") (internal emphasis omitted).  Accordingly, courts in Title VII disparate-impact cases typically require the plaintiff to proffer evidence of a statistically-significant disparity between the selection rates of members of the protected group and members outside the group.  See, e.g., Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988) (explaining that "causation must be proved" and thus "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group").

In this case, citing only Title VII disparate-treatment case law (i.e., Hazelwood), the panel majority held that a plaintiff who brings an ADA Section 102(b)(6) claim on behalf of a class of individuals similarly has to offer evidence that the class itself was disproportionately affected by the one-strike rule.  But in doing so, the panel majority overlooked critical differences in the texts of Title VII and the ADA.  While Title VII plainly requires a plaintiff to prove a "disparate impact," nothing in the ADA requires comparative proof of such a disproportionate impact at all.  Instead, Sections 102(b)(3) and 102(b)(6) of the ADA require a plaintiff merely to prove an adverse effect – e.g., that a selection standard or

criterion "screens out or tends to screen out" an individual with a disability or a class of individuals with disabilities.

To be sure, for an adverse action to be unlawful under the ADA, it has to be "on the basis of disability." See 42 U.S.C. § 12112(a). To demonstrate this causal nexus, a plaintiff bringing an ADA screen-out claim could, if appropriate and feasible, elect to use the kind of comparative statistical or anecdotal evidence of disparate impact used in Title VII cases. See, e.g., 29 C.F.R. Pt. 1630 App. § 1630.15(b) and (c): Disparate Impact Defenses (explaining that "[d]isparate impact means, with respect to title I of the ADA and this part, that uniformly applied criteria have an adverse impact on an individual with a disability or a disproportionately negative impact on a class of individuals with disabilities"). But neither the Supreme Court nor this Court has ever held that showing such a disproportionate adverse effect is the only way to show that a particular neutral employment practice resulted in discrimination "on the basis of" a disability.

Nor should it. The EEOC has long taken the position that it is unnecessary and often will be impractical to require any statistical showing of disparate impact on "people with disabilities." According to the EEOC's Technical Assistance Manual on the ADA (first issued in 1992), while the "screen-out" standard under the ADA is similar in certain respects to the Title VII disparate-impact standard:

> under the ADA the standard may be applied to an individual who is screened out by a selection procedure because of disability, as well as to a class of

10

persons. It is not necessary to make statistical comparisons between a group of people with disabilities and people who are not disabled to show that a person with a disability is screened out by a selection standard. Disabilities vary so much that it is difficult, if not impossible, to make general determinations about the effect of various standards, criteria and procedures on "people with disabilities." Often, there may be little or no statistical data to measure the impact of a procedure on any "class" of people with a particular disability compared to people without disabilities . . . . Because of these differences, the federal Uniform Guidelines on Employee Selection Procedures [UGESP] that apply to selection procedures on the basis of race, sex, and national origin under Title VII . . . do not apply under the ADA to selection procedures affecting people with disabilities.[1]

EEOC Technical Assistance Manual: Title I of the ADA, § 4.3.2 (1992); see also 29 C.F.R. Pt. 1630 App. § 1630.10 (UGESP does not apply to the ADA).[2]

This case illustrates how a "screen-out" claim can be established even without any comparative evidence of disproportionate impact. We assume (as the district court did) that Lopez is otherwise qualified for longshore work and has a disability – i.e., he is a recovered drug addict. See 42 U.S.C. §§ 12114(b), 12210(b) (providing protection under the ADA for rehabilitated drug addicts); see also 29 C.F.R. § 1630.3(b) (same). We also assume that Lopez failed PMA's drug

---

[1] Similarly, an approach requiring statistical showings of disparate impact under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, was considered and rejected in final Section 504 regulations. See 45 C.F.R. Pt. 84, App. A, 42 Fed. Reg. 22685, 22688-89 (May 4, 1977); cf. 42 U.S.C. § 12201(a) (nothing in the ADA shall be construed to provide lesser protections than provided by the Rehabilitation Act or regulations issued thereunder).

[2] UGESP requires employers to maintain data on whether their selection criteria may have a statistically-significant disparate impact on workers by race, sex, or ethnic group. See generally 29 C.F.R. Pt. 1607.

screen because of his past addiction. Years later, the one-strike rule was applied to disqualify Lopez from consideration for casual longshore work.

On these facts, Lopez has satisfied the statutory language and made out a prima facie case of being "screened out" under Section 102(b)(6). A reasonable fact finder could conclude that PMA used a qualification standard/selection criterion (the one-strike rule) that screened Lopez out (PMA disqualified him in 2005) on the basis of disability (Lopez's addiction caused him to fail the 1998 drug test). Consequently, the district court and the panel in this case should have shifted the burden to PMA to prove its statutory affirmative defense.[3]

Further, because the ADA allows for both individual and class "screen-out" claims, other individuals similarly affected should be able to challenge the one-strike rule in the same manner, together. Here, a reasonable fact finder could conclude that the same lifetime ban that screened out Lopez also would have screened out (or at least would have "tended to screen out") others in Lopez's situation. These individuals as a group should not need to adduce any evidence (statistical or otherwise) comparing themselves with individuals outside the group to successfully challenge the one-strike rule.

---

[3] The Commission takes no position on whether the affirmative defense could be satisfied here but notes that this Court previously has held that the "'business necessity' standard is quite high." <u>Cripe v. City of San Jose</u>, 261 F.3d 877, 890 (9th Cir. 2001).

According to the panel majority, by defining the class as drug addicts who were rejected because they failed PMA's drug test, Lopez and his expert had "assumed their own conclusion." Thus, while the majority did not require statistical proof per se, it did insist on Title VII-type comparative evidence of a disparate impact on recovered drug addicts vis-à-vis non-addicts. This presumably was to ensure that the adverse effects were occurring here "because of" the relevant disability.

But the panel majority overlooked a permissible alternate formulation of the affected class. A "class" in this case could be those who were in the same position as Lopez: those who had a disabling drug addiction, who applied to be casual longshore workers with PMA, and who failed the drug screen because of their addiction. With this formulation, it is not sufficient simply to show that individuals were drug addicts and happened also to fail the requisite drug screen. The plaintiff must show that the disabling drug addiction caused the relevant individuals to fail the drug test. Defining the class this way eliminates the majority's concern about causation. The necessary nexus between the challenged criterion and the protected condition – the critical showing that the standard screens out applicants "because of" disability – has already been established through a proper definition of the class. This obviates the need for any

comparative evidence of disproportionate impact, which typically supplies the requisite causal nexus in a traditional disparate-impact case.

In sum, under Section 102(b)(6) of the ADA, proof that just a single individual was "screened out" on the basis of disability is sufficient to shift the burden to the employer to justify the selection criterion in question. However, even if a plaintiff pursues a "class" screen-out claim on behalf of a group of individuals, <u>no</u> comparative evidence of any disproportionate impact is necessary. The panel majority erred in ignoring important differences in statutory text between the ADA and Title VII and, in doing so, wrongly held that ADA screen-out claims can only be established through Title VII-type disparate-impact proof. Therefore, rehearing is warranted.

## II. The Panel's Ruling Contravenes Supreme Court and This Court's Precedent in Stating Categorically that the ADA Does Not Prohibit Adverse Actions Taken Because of "Factors Merely Related to a Person's Disability."

The Commission believes that some of the reasoning in the disparate-treatment section of the panel's opinion conflicts with Supreme Court case law, is inconsistent with this Court's prior precedent, and could have unintended adverse consequences in future ADA cases. Therefore, the EEOC strongly suggests that the Court revise and clarify this portion of the decision. <u>Cf.</u> Fed. R. App. P. 35(a)(1) (rehearing may be ordered if en banc consideration is necessary to secure or maintain uniformity of the Court's decisions).

The panel majority cited the Supreme Court's decisions in Raytheon and Hazen Paper for the sweeping proposition that the ADA only "prohibits employment decisions made because of a person's qualifying disability, not decisions made because of factors merely related to a person's disability." Slip Op. at 4. But given the unique facts in Raytheon – the employer had refused to rehire an individual who previously had tested positive for illegal drugs because of a drug addiction – that proposition is entirely unremarkable. Indeed, the ADA itself provides for just this result. Section 104(c)(4) permits an employer to "hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee." 42 U.S.C. § 12114(c)(4) (emphasis added); see also 29 C.F.R. § 1630.16(b)(4) (same). Accordingly, in the context of drug addiction-related misconduct, the Supreme Court's own analogy in Raytheon to Hazen Paper was apt. See 540 U.S. at 54 n.6.

But this specific statutory rule cannot be applied more generally to any claim brought under the ADA. The statute contains no similar provision with respect to any other disability. The fact that Congress expressly chose to make a distinction between disability and disability-related conduct only in the narrow drug and alcohol context strongly suggests that no such distinction should be drawn in cases

involving other disabilities. Indeed, the Supreme Court in <u>School Board of Nassau County v. Arline</u>, 480 U.S. 273 (1987), concluded that symptoms, characteristics, and/or manifestations of a disability sometimes are synonymous with the disability itself and should be treated as such. <u>Id.</u> at 282 (rejecting the notion that the contagious effects of a disease "can be meaningfully distinguished" from the disease itself). To the extent the panel's holding suggests otherwise, it directly conflicts with the Supreme Court's ruling in <u>Arline</u>.

It also is contrary to this Court's prior (but post-<u>Raytheon</u> and post-<u>Hazen Paper</u>) binding precedent. This Court has consistently recognized that symptoms, manifestations, and/or misconduct related to a disability could indeed be the equivalent of the disability <u>except in the case of drug and alcohol-related misconduct</u>. For example, in <u>Gambini v. Total Renal Care, Inc.</u>, 486 F.3d 1087 (9th Cir. 2007), a case brought under the Washington state equivalent of the ADA, an employer fired an employee with bipolar disorder after the employee had a "violent outburst" at a meeting with her supervisors. <u>Id.</u> at 1092. The record revealed that the plaintiff's bipolar disorder "manifested itself through her irritability, her 'short fuse' and her sometimes erratic emotions." <u>Id.</u> at 1094. Thus, this Court concluded, the jury was entitled to infer reasonably that her conduct "was a consequence of her bipolar disorder, which the law protects as part and parcel of her disability." <u>Id.</u> Accordingly, the Court ruled, the plaintiff was

"entitled to have the jury instructed that if it found that her conduct at issue was caused by or was part of her disability[,]" it also could find that she was fired because of her bipolar condition.  Id. at 1095.  Citing to the Supreme Court's decision in Arline, this Court reasoned that to hold otherwise would be essentially to render the prohibition on disability discrimination meaningless.  According to the Court, "if the law fails to protect the manifestations of [a] disability, there is no real protection in the law because it would protect the disabled in name only." Id. (citing Arline, 480 U.S. at 279).

In reaching this result, this Court in Gambini also relied on its earlier decision in Humphrey v. Memorial Hospitals Association, 239 F.3d 1128 (9th Cir. 2001).  There, the Court ruled that "[f]or purposes of the ADA, with a few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis" for taking an adverse action.  Id. at 1139-40 (citing Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1086 (10th Cir. 1997), with approval).  The "exceptions" cited by the Court were – not surprisingly – found in the addiction-related misconduct provisions of the ADA.  Id. at 1139 n.18. The Court explained that the "text of the ADA authorizes discharges for misconduct or inadequate performance that may be caused by a 'disability' in only one category of cases – alcoholism and illegal drug use[.]"  Id. (emphasis added) (citing 42 U.S.C. § 12114(c)(4); Newland v. Dalton, 81 F.3d 904, 906 (9th Cir.

1996) (an employer may fire an employee who went on a "drunken rampage");

Collings v. Longview Fibre Co., 63 F.3d 828, 832 (9th Cir. 1995), cert denied, 516

U.S. 1048 (1996) (involving discharge for drug-related misconduct)).

The decision in this case could be read to conflict with this prior binding precedent. Therefore, the Commission respectfully requests that the Court revise the relevant portion of the panel's original ruling to ensure that it is consistent with Arline, Gambini, and Humphrey.

## CONCLUSION

For the foregoing reasons, the EEOC believes rehearing or rehearing en banc is warranted.


Respectfully submitted,

P. DAVID LOPEZ                          s/ DANIEL T. VAIL
General Counsel
                                        Attorney
CAROLYN L. WHEELER                      U.S. EEOC
Acting Associate General Counsel        131 M Street NE, Room 5NW14P
                                        Washington, D.C.  20507
LORRAINE C. DAVIS                       (202) 663-4571
Assistant General Counsel               daniel.vail@eeoc.gov

## CERTIFICATE OF COMPLIANCE

I certify that the attached amicus brief in support of a petition for rehearing or rehearing en banc complies with the length limitations found in Circuit Rule 29-2(c)(2) because it is proportionately spaced, has a typeface of 14 points or more, and contains 4200 words.

s/ DANIEL T. VAIL

Attorney
U.S. EEOC
Office of General Counsel
131 M Street NE, Room 5NW14P
Washington, D.C.  20507
(202) 663-4571
daniel.vail@eeoc.gov

# **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 4, 2011.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ DANIEL T. VAIL

Attorney
U.S. EEOC
Office of General Counsel
131 M Street NE, Room 5NW14P
Washington, D.C.  20507
(202) 663-4571
daniel.vail@eeoc.gov